JAMES R. BRADY *et al.* *vs.* J. ROLAND BRADY.

*Joint and Several Promissory Note—Burden of Proof as t*
*Suretyship of One Maker for the Other—Payment of Note*
*by One Maker Creating Right to Contribution—Paid*
*Note in Possession of One Maker—Limita-*
*tions—Evidence.*

When a promissory note is executed by two persons jointly and severally, the presumption is that the debt was created for their equal benefit, and the burden of proving that one of the makers signed the note as surety for the other is upon the party alleging it.

In this case, that burden has not been met and the presumption prevails.

When one joint maker of a note pays the whole amount due on it, he is entitled to contribution from his co-maker under the count for money paid in an action of assumpsit.

A joint and several promissory note, payable to a bank, and signed by A. and B. was found, after the death of B., among his papers. The evidence showed that he had paid the note to the bank. *Held,* that this fact establishes *prima facie* the right of B.'s administrator to demand contribution from A., as a co-maker of the note, in extent of one-half of the amount paid by B.

When one joint maker of a note pays it before it is barred by the Statute of Limitations, then, as against his right to demand contribution from a co-maker, limitations begin to run from the date of such payment.

When the question is whether a payment was made by a certain person or not, evidence that he was possessed of sufficient money to make it is not admissible to show that he probably did make it.

The opinion of a witness as to the financial ability of a person to make a certain payment is not admissible.

*Decided June 28th, 1909.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Richard B. Tippett* and *E. John W. Revell,* for the appellants.

*A. T. Brady* (with whom was *Jerry L. Smith* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the 22nd of December, 1893, the appellee and the late JUDGE JAMES REVELL executed and delivered to the Farmers' National Bank, of Annapolis, the following promissory note:

($500).                    ANNAPOLIS, MD., Dec. 22, 1893.

On demand, we jointly and severally promise to pay to the Farmers' National Bank, or order, Five Hundred Dollars, value received.

J. ROLAND BRADY,<br>JAS. REVELL.

JUDGE REVELL died in March, 1908, and after his death this note was found among his private papers, in his safe deposit box in said bank, endorsed as follows:

In red ink at the top of the note.

J. R. BRADY
    Demand
        Dec. 22, 1893.

In black ink.

Note.................................................$500.00
Interest, Nov. 6, '96............................... 86.25

                                          $586.25
Paid Nov. 6, '96, by J. R............................ 100.00

                                          $486.25
Interest to Mch. 10, '97............................ 10.04

                                          $496.29
Paid Mch. 10, '97, by J. R......................... 60.51

                                          $435.78

28th Sept., '98, Int. pd. to Sept. 10, '98........$39.24
18th Mch., '99, Int. pd. to Mch. 10, '99......... 13.08
5th Apr., 1900, Int. pd. to Mch. 10, 1900...... 26.16
Sept. 27, 1900, Int. pd. to Sept. 10, 1900...... 13.08
Mch. 27, 1901, Int. pd. to Mch. 10, 1901...... 13.08
Feby. 28, 1902, Int. pd. to Mch. 10, 1902...... 26.16
Sept. 28, 1903, Int. pd. to Sept. 10, 1903....... 39.22
Mch. 29, 1904, Int. pd. to Mch. 10, 1904...... 13.07
Sept. 26, 1904, Int. pd. to Sept. 10, 1904....... 13.07

Int. to 15th May, 1905............................. 17.65

                                          $453.43
Int. to Mch. 10, 1904............................. 13.07
Int. to Sept. 10, 1903............................ 39.22

On the face of the note was written:
    "Farmers' Nat. Bank.
        Paid May 15, 1905,
          Annapolis, Md.
             Paid in full by Jas. Revell, 15 May, 1905.
                  L. D. GASSAWAY, Teller."

On the 2nd day of May, 1908, the administrators of JUDGE REVELL brought suit to recover from the appellee, J. Roland Brady, the amounts paid by their intestate on account of

said note, claiming that he signed the note as surety for the appellee.

The narr. contains the common counts in assumpsit, and a special count, charging the payment of the note and interest by JUDGE REVELL, on the 15th day of May, 1905, as surety.

The case was tried on issues joined on the pleas of never indebted as alleged and never promised as alleged, and on the replication to the plea of limitations, and during the trial three exceptions were reserved, the first and second to rulings of the Court on the evidence, and the third to the granting, at the conclusion of plaintiffs' testimony, of the defendant's prayer taking the case from the jury.

As the prayer does not refer to the pleadings, in passing on that exception we have only the evidence to consider, and it is not necessary to determine whether *under the pleadings* in the case the evidence was legally sufficient to entitle the plaintiffs to recover.

The only witness in the case was Mr. Gassaway, cashier of the bank, who testified that he had been cashier of the bank for six years, and had been connected with the bank for twenty or twenty-five years; that JUDGE REVELL was at the time of his death a director of the bank; that the signatures to the note were the signatures of the appellee and JUDGE REVELL; that the note was in the handwriting of JUDGE REVELL, and that "the memoranda and the receipts on the back of the note" were in the handwriting of former employees of the bank, made in the course of their official duties; that the last two receipts were in his handwriting; that the initials "J. R." after the word paid, on the back of the note, "stood for, he supposed, James Revell," and that the last payment on the note was made to him by JUDGE REVELL on the 15th of May, 1905; that he was one of the appraisers of JUDGE REVELL's estate, and found the note among his private papers, in his safe deposit box in the bank. The note and endorsements thereon were then offered in evidence, and the witness, when asked "to whom the money was paid when the said note was discounted," replied: "From the usual course

of business, I would say it was paid to J. Roland Brady,"
and in reply to the question, "Why do you say it was paid to
the defendant, J. Roland Brady?" said: "Because it is and
has always been the custom of the bank since I have been
connected with it to pay the money to the person whose name
appears first on the note, and I find J. Roland Brady, the
defendant's name, is signed first on the note which I hold in
my hand." He further testified that the note did not show,
and that he did not have any knowledge of any payment by
the defendant on account of the note or interest, and that the
account of the defendant in the bank's ledgers shows that the
following deposits were made between Dec. 21, 1893, and
February 4, 1894:

| 1893—— | | | |
|------|----|---|--------|
| Dec. | 23 | C | $35.98 |
| Dec. | 26 | C | 5.00 |
| 1894—— | | | |
| Jan. | 8 | C | 12.00 |
| Jan. | 9 | C | 16.00 |
| Jan. | 23 | C | 30.00 |
| Jan. | 26 | C | 5.00 |
| Feb. | 6 | C | 3.50 |

And also "showed the following withdrawals:"

| 1893—— | | |
|------|----|--------|
| Dec. | 23 | $ 5.00 |
| Dec. | 26 | 22.98 |
| 1894—— | | |
| Jan. | 3 | 2.50 |
| Jan. | 8 | 1.50 |
| Jan. | 9 | 1.00 |
| Jan. | 10 | 2.50 |
| Jan. | 10 | 10.00 |
| Feb. | 3 | 1.96 |

On cross-examination the witness testified as follows:

Q. "In your examination in chief you said 'according to
the custom of the bank, the money was paid to J. Roland

Brady.' "   A. "Yes."   Q. "But as a matter of fact you do sometimes pay the money to persons other than first signers?" A. "Yes, sometimes; but it is not usual, as I said it is not the custom of the bank to do so."   Q. "Did you not sometimes pay to JUDGE REVELL the money although his name appeared second on the note?"   A. "We may have done so."   Q. "Then you cannot say from your own knowledge that the defendant received the money from the bank?"   A. "No, not from my own knowledge, but from the usual course of business, I would say that he did."

The rule as stated in 2 *Ency. of Evidence,* 462, is that: "Two or more persons signing their names to a note as makers, are presumed to be equally bound as such, and the debt evidenced thereby is presumed to have been created for the equal benefit of the joint makers, in the absence of a contrary showing."   See also 7 *Cyc.,* 653, and 10 *Ency. of Evidence,* 51.

On the face of the note in this case the appellee and JUDGE REVELL are joint makers, and the burden was on the plaintiffs to show that the deceased signed the note as surety for the defendant.  2 *Ency. of Evidence,* 462 and note 46; *Keyser* v. *Warfield,* 100 Md. 72; *Keyser* v. *Warfield,* 103 Md. 161.

"The order in which makers sign a note does not, of itself, raise a presumption of suretyship," (2 *Ency. of Evidence,* 462; 27 *Am. & Eng. Ency. of Law,* 438), and if it was the custom of the bank to pay the amount loaned on a note to the first signer on the note, without any regard to the relations of the makers, then the fact that the money was paid to J. Roland Brady would not tend to show that he received it as principal.

We do not find in the Record evidence legally sufficient to overcome the presumption that the signers of the note were joint makers, and as the case was tried on the theory that the deceased signed the note as surety, it was, no doubt, on that ground that the Court below granted the defendant's prayer.

But it does not follow because of the failure of the plaintiffs to show that the relation of the parties was that of principal and surety, that they were not entitled to recover on the evidence in the case, and that the case should have been withdrawn from the jury.

When one joint maker of a note is required to pay the whole amount due on the note he is entitled to recover contribution from his co-maker on the count for money paid, etc. 1 *Poe's P. & P.,* sec. 113. As we have said, on the face of the note the deceased and the appellee were joint makers. It was found after JUDGE REVELL's death among his private papers, and from the note and the receipts thereon and the testimony of Mr. Gassaway it appears that JUDGE REVELL paid the balance due on the note May 15th, 1905. Ordinarily if a note is found among the maker's papers after his death it will be presumed to have been paid. 8 *Cyc.,* 247.

In the case of *Heald* v. *Davis,* 11 Cush. 318, where the only evidence offered in support of the plea of set-off was the production by the defendant of the note, the execution of which was admitted, the Court said: "We do not question the correctness of the rule as stated in the cases of *McGee* v. *Prouty,* 9 Met. 547, and *Baring* v. *Clark,* 19 Pick. 220, that when a promissory note or bill of exchange has been negotiated, and afterward comes into possession of one of the parties liable to pay it, such possession is *prima facie* evidence of payment by him. But this rule of law does not apply to a possession by one of two joint promisors in an action by him to recover of the other one-half the amount thereof. In the former case, the possession is only to be accounted for, in the absence of evidence in relation to it, by the fact of payment, by the party holding it. Not so, as between co-promisors. The possession by one of them is *prima facie* evidence of payment of the note by them, or one of them; but inasmuch as the possession could not be by each individually, it would be found with one, although both had contributed equally to the payment. In other words, the possession by one does not, as against his co-promisor, raise that inference of exclusive pay-

ment by the holder that would arise where the note was held by an indorser, or a surety, or a sole promisor." That case is cited and relied on in the case of *Bates* v. *Cain,* 70 Vt. 144, where the note was produced by the defendant, "without other evidence as to the fact or manner of payment," and in the case of *Craig* v. *Craig,* 3 Rawle, 472 (24 Am. Dec. 390), the Court held in a suit by one obligor against his co-obligor for contribution, that the *naked fact* that the plaintiff was in possession of the bond was not sufficient to show that he paid the whole debt.

On the other hand, in the case of *Chandler* v. *Davis,* 47 N. H. 462, the Court, in announcing the contrary view, said: "When a note or bill is found, after payment is due, in possession of a party, who was bound to pay it, this is *prima facie* evidence that it has been paid, and that it was paid by the party who has possession of it. 2 *Greenl. Ev.,* sec. 527; *Smith* v. *Smith,* 15 N. H. 55. This is a very familiar rule of evidence applied in every day's practice; and the reason of the rule is obvious, for, in the usual course of business, the note will be delivered on payment to the party that pays it. *Brembridge* v. *Osborne,* 1 Stark. 374. And there can be no presumption, till the fact is proved, that two or more persons, who owe a debt secured by a note, made up a common purse and paid it out of a joint fund. If such an arrangement were made we certainly should not expect the note to be left in the hands of one of them without something to show how the business was transacted; and, therefore, in such case, the presumption will be, till the contrary is shown, that the party to the note, who is found in possession of it, paid it, and the whole of it. Where one of two sureties sues the other for contribution, if he produce the note on trial, it is *prima facie* evidence that he paid the whole of it. In such case the two sureties are equally bound to pay the note, and I find it quite impossible to distinguish that case from this where two joint and several makers are equally bound to pay the debt. In both cases the natural inference is, that the note would be de-

livered on payment to the party that paid it, and remain in his hands till the business was adjusted with the other.

"If there had been but one note in this case, the general rule would apply, that possession of the note by the plaintiff's intestate was *prima facie* evidence that he paid it. But the reason of the rule applies still stronger to this case, for here were two notes of equal amount, which the two makers were equally bound to pay. If each paid his part, and for any reason it was found convenient to preserve the notes uncancelled, why was not one left in possession of the intestate and the other in that of the defendant? And this circumstance, that here were two notes of equal amount, which the two makers were equally bound to pay, distinguishes the present case from *Heald* v. *Davis,* 11 Cush. 318, cited for the defendant. That case goes upon the assumption that, as both parties were equally bound to pay, it must be presumed that both contributed equally to the payment, and that "inasmuch as possession could not be by both individually, it would be found with one, although both had contributed equally to the payment;" a reason which evidently does not apply to this case, where there were two notes of equal amount and there was no difficulty, if half was paid by each of the makers, in leaving one of the notes in the possession of each. No authority is cited for the decision in *Heald* v. *Davis,* and the reason assigned for it is not such as would induce us to follow it without hesitation. It would apply equally well to the case where one of two sureties, who sued the other for contribution, produced the note, on which they were jointly and severally liable, as is in conflict with the general rule, which we take to be extremely well established, that the production of a note by a party, who is bound to pay it, is *prima facie* evidence that it was paid by him. 1 *Greenl. Ev.,* sec. 38; *Baring* v. *Clark,* 19 Pick. 220, 227; *McGee* vs. *Prouty,* 9 Met. 547, 551."

In the case of *Ingram* v. *Croft,* 7 La. 82, the Court held that the "possession of a joint note by one of the drawers, with a receipt of payment by the holder or possessor en-

dorsed on it by the person entitled to receive it, is *prima facie* .evidence of the liability of° the other drawer to refund one-half of the note;" and in the case of *Dillenback* v. *Dygert,* 97 N. Y. 303, the Court said: "We affirm this judgment upon the ground that the note, which was paid by George W. Snell, although extinguished as such by the fact of its payment, remained in the hands of Snell, the evidence of a right to contribution against his co-sureties, establishing both that they incurred the original obligation to contribute, and the fact of payment by Snell, which made that obligation operative in his favor."

In the case of *Keyser* v. *Warfield,* 103 Md. 161, suit was brought by one joint maker of two notes to recover contribution from the other, and the claim was resisted on the ground that the defendant signed the notes as guarantor and had been discharged by the action of the bank. The record shows that the plaintiff offered evidence tending to prove the genuineness of the signatures to the notes; that he paid the amount due on them, and that the defendant signed the notes as maker, and the Court held "that the plaintiff had made out a *prima facie* case."

In the case at bar, unlike the cases of *Heald* v. *Davis* and *Bates* v. *Cain,* we have, in addition to the fact that the note was found among the private papers of the deceased, the testimony of Mr. Gassaway to the effect that Judge Revell, on the 15th of May, 1905, paid the amount then due on the note, and we think the evidence was sufficient to establish the *prima facie* right of the plaintiffs to recover from the defendant one-half of the amount paid by Judge Revell on account of the note and interest with'n three years prior to the bringing of the suit, and that the case should not, therefore, have been taken from the jury.

At the time of the payment of the note, on the 15th of May, 1905, the Statute of Limitations had not attached because of the previous payments on the note (*Burgeon* v. *Bixler,* 55 Md. 392; *Hooper* v. *Hooper,* 81 Md. 155), and when one joint maker of a note pays the debt before it is barred by

statute the statute begins to run as against his right to contribution from the other joint maker from the date of such payment. 9 *Cyc.* 802; *Hooper* v. *Hooper, supra; Davis* v. *Humphreys,* 6 M. and W. 164.

We find no error in the rulings of the Court in the other bills of exception. In the first exception the witness was asked to give his *opinion* as to the ability of the defendant to pay the note from its date to the date of the last payment, and in the second exception he was asked what knowledge he had of the "financial condition" of Judge Revell between the date of the note and the date of its payment, and the Court properly refused to allow the questions to be answered. It is said in 1 *Wigmore on Evidence,* sec. 89, that lack of money or other resources is relevant to show improbability of the making of a loan or payment, but that the possession of money is not admissible "as making probable the payment or loaning of money."

It follows from what we have said that, because of the error in granting of defendant's prayer, we must reverse the judgment below and grant a new trial.

> *Judgment reversed, with costs, and new trial awarded.*