.SAMUEL P. WOODCOCK _v._ WILLIAM P. POPE ET AL.
[No. 38, October Term, 1927.]

136

*Decided January 10th, 1928.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*F. Leonard Wailes* and *Stanley Robins,* for the appellant.

*Benjamin A. Johnson,* with whom were *Long & Johnson* on the brief, for the appellees.

Parke, J., delivered the opinion of the Court.

The appellees, William P. Pope and Milton L. Pope, and one Arthur H. Parker, were partners under the firm name of Parker & Pope, and conducted a garage, which was known as "The Palace Garage," upon an improved lot of land in which Arthur H. Parker held an undivided one-half interest and the other undivided one-half interest was owned by the said William P. Pope and Laura E. Pope, his wife, as ten-

ants by the entireties. Another portion of the premises was under lease to a third party who carried on a lunch room called the "Busy Bee Lunch Room." The property was subject to an outstanding mortgage lien of nineteen thousand dollars under a mortgage deed executed by the three owners. After an association of more than two years, the partner Arthur H. Parker determined to withdraw, and the three parties entered into an agreement on January 1st, 1924, providing for the disposition of the tangible partnership assets, the dissolution of their relation, the continuation of the business by William P. Pope and Milton L. Pope, two of the former partners, and the winding up of the affairs of the old firm.

By this agreement, Parker sold to his two former partners his undivided one-half interest in all the merchandise, stock, fixtures, and automobiles of the original partners. It was agreed that all moneys due and owing to the old firm before the date of the agreement should be collected by the parties to the agreement, and should be applied so far as was necessary in payment of any indebtedness of the former partnership that was incurred before the same date; and, if such collections be insufficient for that purpose, the deficit should be met by the original partners in accordance with their respective interests in the business before that date, but if, on the contrary, a surplus should result after making payment of such indebtedness, this surplus should be applied in satisfaction of the mortgage indebtedness on the property in which the business had been conducted, and in which Parker held an undivided one-half interest in fee, and William P. Pope and Laura E. Pope, his wife, as tenants by the entireties, the other undivided one-half interest.

The stipulations mentioned are placed in the agreement, after a lease of the retiring partner's undivided one-half interest in the premises, in which the garage had been located and where the remaining members of the firm were to continue the business under the terms now to be stated. The lease of Parker's interest was for a period of five years, beginning on the 1st day of January, 1924; and the rental

was fixed and its payment and application controlled and stipulated by the following language: "The said parties of the second part" (the appellees) "agree and covenant to deposit on the last day of each month during the term of this lease the sum of three hundred dollars ($300.00) in one of the banks of the City of Salisbury, which said money so deposited by the parties of the second part after deducting such money as shall be paid by the parties hereto for insurance, interest, taxes, and necessary repairs to building shall be applied on the mortgage now standing against the property and owned by the parties hereto." The further provisions of this lease were a declaration that the demise was subject to the outstanding term of the "Busy Bee Lunch Room" at a monthly rental of sixty-five dollars; a stipulation that the rental from that part of the premises occupied by the lunch room should be collected by the appellees and applied by them in part payment of their monthly rental of three hundred dollars, which last mentioned rental should either be diminished or increased as much as the monthly rental of the lunch room would be less or more than the sum of sixty-five dollars, or be reduced to two hundred and thirty-five dollars a month if the lunch room should be without a tenant.

About six weeks after the execution and delivery of this sealed and acknowledged instrument, Parker and his wife conveyed his undivided one-half reversionary interest in the land to Samuel P. Woodcock, the appellant, by deed bearing date February 28th, but not recorded until the following September 30th. The consideration for the grant was the assumption and covenant by the grantee to pay one-half of the mortgage lien of nineteen thousand dollars outstanding on the property, the receipt of a nominal sum of money and of "other good, valuable and sufficient considerations," which are not disclosed in the deed. The new firm remained in possession of the entire premises until July 11th, 1925, when the property was surrendered to the appellant as the purchaser under partition proceedings begun by him. On July 22nd, 1926, the appellant, as assignee of the reversion, brought an

action against the former tenants of his undivided one-half interest, alleging a failure on the part of the appellees to deposit the monthly sum of three hundred dollars and to pay the residue, after the deduction for insurance, interest, taxes and necessary repairs, upon the mortgage indebtedness on the property as covenanted by their articles of agreement. There is no question that the money was not deposited nor disbursed as agreed, but the appellees claimed credit against his damages for certain insurance, interest, taxes, and repairs, which they paid on their own judgment and initiative, and without establishing in any instance that the payment was on account of an obligation incurred or becoming due after the date of the articles of agreement. By reason of these credits going to the jury, the claim of the appellant was materially reduced and he obtained a judgment for the sum of one hundred and five dollars and twenty-three cents. The appellant has appealed, to have reviewed forty-eight exceptions, which all arose on adverse rulings on the evidence, except the forty-eighth, which was to the action of the trial court on the prayers. The propriety of the trial court's rulings will largely depend upon the construction to be given the agreement of January 1st, 1924, and so it will be first considered.

As none of the conditions arose which would have either lessened or increased the monthly payment of three hundred dollars, the failure of the covenantors to deposit that amount on the last day of every month in which the lease was in effect was a clear breach of the covenant, and defeated the intention of the parties that the money to be so deposited was not to be withdrawn except for the payment by the parties to the agreement of the insurance, interest, taxes, and necessary repairs to the building, and for the application of the residue to the subsisting mortgage indebtedness on the property. These provisions, which became inoperative because of the refusal of the appellees to deposit, were designed to assure to the contracting parties the setting apart·of the rent for designated purposes, the placing of the rent as it should accrue monthly in a depositary, and the securing its

use for only the specified objects by committing the control of the fund in the depositary to the antecedent agreement and joint action of the three parties, and their privies, to the covenant. If all such parties were not required to act in the distribution of the fund, there would be no check upon the act of one with respect to what concerned all. The breach of declining to make the stipulated deposit was in a vital matter. Nor was this breach shown to have been waived; and it appears from the record that, on their own responsibility, and without any previous knowledge and authorization by Arthur H. Parker or the appellant, his assignee, the appellees made the several payments for which they claimed credit in the trial court. The failure of the appellees to make the deposit was a breach of the contract, and entitled the appellant to recover. 3 *Williston on Contracts,* sec. 1303, p. 2355.

. The amount of recovery here is by way of compensation for the actual loss sustained. If, therefore, the defendants applied the rent or any portion of it in such a way that ultimately the appellant received the same beneficial result as he would have enjoyed if the rent had been applied as contemplated by the agreement, the damages recoverable must be diminished to that extent, and testimony would be relevant and material if evidential of this fact. *Tidewater Oil Co. v. Spoerer,* 145 Md. 151, 154, 155. So, the terms of the agreement must again be resorted to in order to determine what expenses were payable and then which of these was discretionary.

1. The first question is, Were any of the partnership debts of the old firm of Parker & Pope payable out of the rentals to be deposited under the agreement of January 1st, 1924? The agreement fixed its date, of January 1st, 1924, as the crucial day when the rights and liabilities of the partnership of three were to end, except for the necessary purpose of winding up the old partnership affairs; and the rights and liabilities of the new partnership of two, on the one hand, and of the retiring partner as lessor, on the other, were to begin. So, it is found that the term of the lease is to begin on that day; that the moneys due the old firm, and the debts pay-

able by it, and the liability of every one of its three members, as well as their respective interestes in any surplus for division, are all referable to that single date for ascertainment. In other words, the first day of January was the point in time when the old relation was to cease, except for the discharge of its subsisting liabilities and a distribution of its social assets, and the new one under the agreement and lease was to begin. This is very clearly shown by the provisions made for the settlement of all the old partnership obligations out of its intangible partnership assets; and, that failing, by the agreement for the deficit to be assumed and discharged by the three members of the original partnership according to their several interests in the business. These explicit stipulations for a complete method of satisfying and paying all the debts of the original partnership negative the implication that any of the subsequent rentals of the premises on which the partnership business had been carried on, which were not partnership property but owned in undivided half interests by the appellant and by William P. Pope and his wife, Laura E. Pope, the latter holding as tenants by the entireties with respect to their undivided moiety, could be diverted to the discharge of the debts of the first partnership. Moreover, the rent under the new lease was dedicated from its origin. As soon as a monthly installment became payable by the new firm, it must straightway be deposited in a local bank, and only to be withdrawn for the purpose of meeting new and current obligations of the landlords. Insurance on the property demised, interest on the mortgage indebtedness, taxes, and necessary repairs, and payments, if residue there be, on account of the principal of the mortgage debt, which are the prescribed purposes for which the fund so deposited may be withdrawn and used, are the characteristic obligations of the owner and landlord. A different view would divert the rentals from the present owner, who is an assignee, to the payment of the debts of his assignor, without anything in the instrument to warrant such a construction. The answer to the first question must, therefore, be in the negative, and the

appellants cannot prove in mitigation of the damages the payment of the debts of the old firm of Parker & Pope.

2. The second question is, Can the payment of debts for insurance on the buildings, and for the making of necessary repairs, and of taxes, and interest on the mortgage lien, which were made or accrued due before the date of the agreement in question be received in evidence as reflecting on the amount of damages sustained. Unless it be expressly provided otherwise, the covenants and obligations of a lease are generally limited in scope and application to a subject matter which is conterminous with the demise. The contract of letting creates a new estate, and the rights and obligations arising and assumed relate to the present and future rather than to the past, and hence a prospective and not a retrospective effect is to be given unless the intention of the parties as expressed in, and gathered from, the document itself would otherwise be defeated. It is but reasonable to deduce from the language of the lease that the monthly installments of rent were not to be paid out for a past indebtedness, but were to constitute a fund wherewith to maintain the premises in tenantable condition and to safeguard the interests of both the landlord and the tenants during the ensuing term, by taking care of these repairs and the current taxes, interest, and insurance. For these reasons, and others which have already been considered, and there being no expression of intention to the contrary in the agreement, all debts for insurance on the buildings and for the making of necessary repairs, and for taxes and interest that were incurred and fell due before the date of the agreement, cannot be held to have been within the contemplation of the parties. The obligations subsisting at the execution of the agreement on account of insurance and repairs require no further discussion, but those resulting from prior taxes and interest payments have distinguishing attributes which require further consideration.

The original obligation to pay taxes does not proceed from contract, but from an exercise of the sovereign power of the State. The duty of the owner of property to pay arises from the imposition of the tax; and the lien upon realty of the

tax until paid is incident to the ownership of the land, and follows it no matter how frequent the change of owners. So that, as between vendor and vendee, the express or implied obligation of the vendor may have been to pay all taxes due or in arrears at a time to be ascertained from the terms of sale, yet the effect of the taxes remaining a lien on the land until paid imposed a secondary liability on the vendee. Apart from its inception in the contractual relations of the original parties, a mortgage indebtedness and lien are substantially similar to the lien for taxes, when viewed from the status of the purchaser of an equity of redemption in land. In the instant case, there is furthermore the express assumption and covenant by the appellant, as vendee of the undivided one-half interest in the land, to pay one-half of the balance of nineteen thousand dollars remaining unpaid on the mortgage debt mentioned. The appellant, therefore, explicitly contracted to pay the residue of the mortgage debt, which included both principal and interest. If, at the date of the agreement, there were a default in the payment of the taxes due or in the payment of interest according to the tenor of the mortgage deed, the lien in either case could have been enforced, and the destruction of the leasehold interest acquired by the appellees under their contract with Arthur H. Parker would have followed the sale to enforce the lien.

If, in order to stop a pending tax sale or foreclosure, or to avert either, acting upon a reasonable and well grounded apprehension that a tax sale or foreclosure proceeding would otherwise happen, the appellees paid out of their own funds either the taxes or the interest accrued and due at the date of their agreement, such a payment, in either contingency, would be regarded as having been necessarily made; and the appellees, having discharged under compulsion a lien on the land of the appellant, would be entitled to show such a payment in mitigation of damages for the breach of covenants respecting the payment of rent for the premises on which the lien existed.

3. The third question on the construction of the agreement is, Can the payment of debts for taxes, for insurance

on the buildings, for necessary repairs, and for interest on the mortgage lien, which were made or accrued due after the date of the agreement in question, be received in evidence in mitigation of damages?

The amount of the taxes and interest on the mortgage debt becoming due and payable after the date of the agreement is not fixed by the agreement of the parties to the contract, but the first is determined by the assessment and levy, and the second by the terms of the prior existing mortgage instrument. On the other hand, the amount of insurance on the buildings and the amount to be expended for necessary repairs was subject to the control of the parties to the agreement. And, finally, for which of these authorized items and in what order and sums should the money be withdrawn were things committed to the discretion of the three parties to the agreement, and all lost to the appellant through the appellees' breach. Yet, if the sums certain for taxes and interest became due and were paid during the term by the appellees out of their own funds and because of the rent owing from them, the appellant's own obligations with respect to these items were discharged, and if, without refunding or offering to refund to the appellees the amounts so paid, the appellant brought suit and were suffered to recover without the deduction of these payments, the appellees would be punished and the appellant would be enriched by double compensation, which no sound theory of damages will support. *Tidewater Oil Co. v. Spoerer,* 145 Md. 151, 154, 155; *Hogan v. McMahon,* 115 Md. 195, 201, 202, 203; 1 *Tiffany on Real Property,* sec. 200, p. 691; 1 *Sutherland on Damages* (4th Ed.), sec. 230; *Mayne on Damages* (10th Ed.) 219.

A greater difficulty is presented by the payments made on account of insurance, since, in the absence of any covenant on his part, the lessor of the undivided moiety was not bound as landlord nor as tenant in common with William P. Pope and Laura E. Pope, his wife, to insure the improvements on the property. Nor can one cotenant assume to take the place of the other cotenant for the purpose of insuring a cotenant's interest which that cotenant does not choose to insure, and

then for this intermeddling claim reimbursement under rights arising solely as a volunteer, since the cotenant so acting may secure his own protection by insuring his interest, if he like. The record shows, however, that insurance was carried, and that the appellant did not participate in securing it, but he is charged with notice of the terms of the lease, and bound by them, and if, at any time from the date of the agreement to the time the appellees acquired knowledge of the assignment of the reversion to appellant, the appellees and Parker had agreed pursuant to the terms of the lease to have the buildings insured for their common benefit, and the premiums for such insurance, falling due, were paid during the term by the appellees out of their own funds and because of their obligation to pay rent, these payments should be considered in abatement of damages, on the theory of a discharge by the appellees of an obligation incurred under the terms of the lease. *Waters v. Wambach,* 140 Md. 253, 256, 257.

The question of the payment for repairs differs from all the others on this record. Unless compelled by express agreement, the landlord is not bound to make repairs during the term. The lease on this record does not contain any covenant to repair, and the law will not imply one. In *Moyer v. Mitchell,* 53 Md. 171, our predecessors applied the rule, as expressed in *Sheets v. Selden,* 7 Wall. (U. S.), 423, that "the tendency of modern decisions is not to imply covenants which might and ought to have been expressed if intended. A covenant is never implied that a lessor will make any repairs." Pages 176-178. See *Gluck v. Baltimore,* 81 Md. 315-326, 327; *Clark & Stevens v. Gerke,* 104 Md. 504, 521, 522; *Kirby v. Wylie,* 108 Md. 501, 512; *Smith v. State, use of Walsh,* 92 Md. 518, 529, 530, 531; *Mylander v. Beimschla,* 102 Md. 689, 693; 3 *Williston on Contracts,* sec. 1967; *Tiffany on Landlord and Tenant,* sec. 57. It follows that a tenant has no right, in the absence of agreement, to deduct the cost of necessary repairs from the rent. *Bonaparte v. Thayer,* 95 Md. 548, 557.

A further aspect of this case remains to be considered. The appellant, as was his predecessor in title, is the landlord

of an undivided one-half interest, and one of his tenants is a stranger to the title to the land, but the other of the tenants, William P. Pope, is not. As has been stated, William P. Pope and Laura E. Pope, his wife, are tenants by the entireties in the remaining moiety. While it does not so appear from the record, yet if it be assumed that the husband was acting as the agent for the wife with respect to their undivided one-half estate, and that as a tenant in common he caused to be made during the term necessary repairs and improvements, which were paid for by himself and son, copartners, trading as William P. Pope & Son, nevertheless the firm so providing the money could not, by way of subroration to the rights of William P. Pope as cotenant, claim mitigation of damages to the extent of the money advanced for necessary repairs or improvements. The reason is twofold. In the first place, the general rule is that one cotenant is entitled to contribution from another for necessary repairs and improvements when they were made with the assent of the other, or the repairs were necessary for the preservation of the building or other erection on the land, and were done by one cotenant after request of and refusal by the other cotenant. *Hogan v. McMahon,* 115 Md. 195, 201, 202; *Bonaparte v. Thayer,* 95 Md. 548, 587; *Williams v. Harlan,* 88 Md. 1; *Tiffany on Real Property* (2nd Ed.), sec. 200, p. 689; *Israel v. Israel,* 30 Md. 120, 128; *Venable's Real Property,* p. 102. See *Scheidt v. Schermerharn,* 133 Md. 468, 471, 472; *Kvedera v. Mondravitzky,* 145 Md. 260, 263; *Masterman v. Masterman,* 120 Md. 167. In the second place, the parties have expressly covenanted in accordance with the general rule, by providing that the parties of the second part, the appellees, shall place the money on special deposit, and that this money shall not be withdrawn from the depositary except on the order of the parties of the first and second part for certain specified objects, as all the parties shall jointly have agreed. This construction of the agreement meets the evident purpose of the parties, and is fair and sensible. If either the party of the first or second part, or any one of them, should have the right to make and pay a

charge for any of the purposes named, every one could act independently of the other, and there would be no effective restraint imposed on either the amount or nature of the repair, and particularly would the party of the first part and his assignee be put in jeopardy by the construction urged by the appellees. *Woodfall on Landlord and Tenant* (21st Ed.), 167.

Having determined the construction to be given to the agreement, its application will determine the questions raised on the prayers and on many of the rulings on the evidence. To avoid repetition the reasons for our action on the various bills of exception will not be stated, except in a general way.

There was error in the ruling on the fourth exception, as the question did not refer to the period during which the insurance was effective, and the answer showed the payment to have been made for "back insurance" or for premiums owing by the firm of Parker & Pope prior to January 1st, 1924. The court should have excluded the evidence of repairs introduced under the sixth, seventh and eighth exceptions, since the proof did not tend to establish that these repairs were made and paid for according to the terms of the agreement. The testimony under the thirteenth, sixteenth, seventeenth, eighteenth and thirty-fifth exceptions should have been admitted as showing for what year or from whose funds the taxes were paid; and likewise the questions on the nineteenth, twentieth, twenty-first, twenty-second, twenty-third and thirty-third exceptions, it being proper on cross-examination to inquire from whose funds, on what account, or for what period the insurance was paid; and so, the questions on the thirty-fourth and twenty-fifth exceptions, since it was material to know from what source and on what account the interest on the mortgage was paid. There was error in the ruling on the second exception, since the evidence offered tended to show the time of knowledge by the appellees of the deed to the appellant; and so, on the tenth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, thirty-fourth and thirty-eighth, because it was admissible on cross-examination to show a failure to deposit and apply the rent as agreed;

and, also, on the thirty-ninth exception, forty-fourth, forty-fifth, forty-sixth, since the evidence rejected was for the purpose of identifying a relevant paper, and ascertaining the items represented in the several totals of the statement on the paper from the party who made it. There was no error in the ruling on the second exception, as the deed of assignment determined when the appellant was to take the rent as assignee of the reversion; nor on the twenty-sixth exception, as the question was too indefinite; nor on the first, fifth, ninth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-sixth, thirty-seventh, fortieth, forty-first and forty-second exceptions, since the testimony excluded was either irrelevant, immaterial, or the question asked later answered or its pertinancy not disclosed. The final exception on the evidence was to the refusal of the trial court to admit in evidence a detailed statement purporting to be the expense account of William P. Pope & Son from January 1st, 1924, to June 16th, 1925. Beyond its being handed to the attorneys for the appellant by one of the attorneys for the appellees, there is nothing from which it can be determined who prepared or authorized the statement, or what were the circumstances under which it was presented. The purpose of this offer was to show that it omitted an item of $1,117.50 for insurance prior to the term of the lease, although including payments for insurance made during the term, in order to demonstrate that the appellees had, within two weeks before the trial, put a different interpretation on the lease than they were urging at the trial. This paper was not admissible for the purpose of showing the appellees have given the agreement a meaning different from that which results from its construction.

There is no evidence that the payment of taxes was made by the tenants under compulsion, and so the appellant's third prayer, instructing the jury not to allow as a credit against the appellant's claim any taxes due prior to the beginning of the term of the lease should have been granted. 1 *Poe, Pl. & Pr.*, sec. 109. The appellees were not entitled by way of mitigation of damages to have the jury take into consid-

eration the payment of insurance premiums or obligations which were created before the lease, and the appellant's fifth prayer to that effect should not have been refused. The prayer of the appellees' should not have been granted, as it was based on a wrong construction of the lease and directed a reduction of the damages by the sums spent by the appellees for insurance, taxes, interest, and necessary repairs, and without reference to whether they were incurred during or before the term.

For the indicated errors in the rulings on the evidence and prayers, the judgment will be reversed and the cause remanded.

> *Judgment reversed, with costs, and cause remanded for a new trial.*