# WITHERS *v.* DOUGLAS
[No. 71, October Term, 1954.]

*Decided January 14, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Solomon B. Levin* for the appellant.

*D. Sylvan Friedman* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The chancellor determined that there had been a valid, though informal, gift of an interest in a chattel real by

one co-owner to the other, and George Withers, who had been constituted the unwilling donor, appealed. He and Mary E. Douglas, the appellee, had lived together as husband and wife without benefit of clergy, from 1930 until the latter part of 1949 or the early part of 1950, when he left her. Four children were born to them, three of whom survived. In 1944, the couple, who held themselves out as man and wife, purchased a home in Baltimore for $1,300.00, taking title as tenants by the entireties and executing a mortgage to a building association for $1,040.00. After the appellant left home, the appellee continued to live there with the children. When he left, some $400.00 was due on the principal of the mortgage, which the appellee paid, as she did the interest, taxes and ground rent. The appellant says all payments were made with money he sent her. She says the amount was far less than he claims and was sent and used for the support of the children. Withers testified that after he left her, the appellee made life miserable for him by hounding him for money wherever he went and that it was this which was behind the expressions in three notes he wrote her. The first was sent in April, 1951. It said in part: "You will better sell the house and get the money for it. I will sign it over to you." A year later, he wrote: "I am paying no more the house is yours—do what you want with it." A month later, he write again: "Here is 50 Dollars I cant give anymore—the house is yours so Please dont Bother me—I pay no more." In fact, he continued to send substantial sums after each of the notes.

Several months after the first note in 1951, the appellee's mother spent $200.00 in having the walls of the house damp proofed, and the appellee had some papering done.

In 1953, the appellant filed a bill for the sale of the property. Unless he had given away his interest, the remedy he sought would have been available to him under Code (1951) Art. 16, Sec. 170, as a co-owner (it is not necessary to decide whether he was a joint tenant, a

tenant in common with right of survivorship, or a tenant in common; *Michael v. Lucas,* 152 Md. 512; *Mitchell v. Frederick,* 166 Md. 42, 92 A. L. R. 1412, 1420; *Hutson v. Hutson,* 168 Md. 182; *Donnelly v. Donnelly,* 198 Md. 341). That the property was acquired as an incident to an illicit relationship, would not, under the circumstances, defeat his right to require a sale. *Maskell v. Hill,* 189 Md. 327, 335.

After the decree had been passed for the sale of the property, the appellee, with leave of court, filed a cross-bill in which she alleged that appellant "had abandoned and voluntarily surrendered and given to your Complainant any interest he had in said property" and prayed that a trustee should be appointed to convey to her absolute title to the property. The chancellor dismissed the bill and granted the relief prayed in the cross-bill.

It is conceded, as it must be, that the letters relied on by the appellee do not meet the requirements of Code (1951) Art. 21, Sec. 1, so as to convey an interest in real estate. Standing alone, writings ineffective under the statute, will not be given effect in equity. *Berman v. Berman,* 193 Md. 614. In that case, those claiming as donees did so by virtue of a deed which had been signed, sealed and delivered to them by the donor, who had declared in the presence of witnesses, that it was his intention to give them the property. The deed was not acknowledged. The donees never had possession of the property described and intended to be given. The Court said that there was no gift, since the writing relied on was void. The appellee here relies not only on the letters to show an intent to give, but on possession of the property given and the making of valuable improvements to the property—all in reliance on, and pursuant to, the gift. It is true that equity protects a parol gift of land if accompanied by possession and the donee, induced by the promise to give it, has made valuable improvements on property by the expenditure of labor or money. The principle involved and the tests applicable are similar to those which underlie and control the doctrine of part

performance in cases of contracts to sell land which do not meet the requirements of the statute of frauds. *Hardesty v. Richardson,* 44 Md. 617, 624; *Miller, Equity Procedure,* Sec. 671, p. 777; *Restatement, Restitution,* Sec. 164, p. 666; *Pomeroy, Specific Performance of Contracts,* 3rd Ed., Sec. 130. The tests as to part performance require that the proof must be clear, definite and conclusive, both as to the fact of the gift and as to the acts done, as well as that the acts had been done on the strength of the gift only, so that any attempt by the donor to avoid the gift would be inequitable to the point of fraud. *Hardesty v. Richardson, supra; Soehnlein v. Pumphrey,* 183 Md. 334, 336; *Polianski v. Polianski,* 138 Md. 598; *Whitaker v. McDaniel,* 113 Md. 388; *Chamberlain v. Preston,* 170 Md. 1; *Jaworski v. Jaworski,* 202 Md. 1. See also *Reinhardt v. Fleming* (Wash.), 140 P. 2d 504; and the annotation in 155 A. L. R. 73, 76.

The tests as to whether the acts of part performance are referrable only to the contract or gift are discussed in *Semmes v. Worthington,* 38 Md. 298, 327, where the Court pointed out that the "partial and subordinate possession" of the claimant was an equivocal act "susceptible of a variety of interpretations". The Court said: "The act relied on as part performance must, in itself furnish evidence of the identity of the contract; and it is not enough that it is evidence of some agreement, but it *must relate to and be unequivocal evidence of the particular agreement charged in the bill."* See also *Chesapeake & Ohio Canal Co. v. Young,* 3 Md. 480; *Mundorff v. Kilbourn,* 4 Md. 459; *Boehm v. Boehm,* 182 Md. 254, 264; *Soehnlein v. Pumphrey, supra.*

Another such test is applied in *Rosenthal v. Freeburger,* 26 Md. 75, 80,—that continuance of possession, taken before the contract or gift was made, is usually insufficient as part performance. In that opinion, the Court, speaking of possession of a tenant holding over, adopted the following language: " 'This is a mere continuance of the character which he all along filled, and any act which may be thus referred to a title distinct

from the agreement cannot be considered as operating to take the case out of the statute.' " *Howard v. Carpenter,* 11 Md. 259, 276; *Billingslea v. Ward,* 33 Md. 48, 54; *Boehm v. Boehm,* 182 Md. 254, 265, *supra.* In *West v. Flannegan,* 4 Md. 36, extensive construction of marine railways at heavy expense by a tenant from year to year was held referrable to the tenancy and not as showing part performance of a contract or license for the use of the leased premises for an indefinite time. *Pomeroy,* in the work cited, says in Sec. 121 at p. 305, that possession, to be sufficient, must: "* * * in short, indicate the commencement of a new interest or estate * * *. The rule concerning exclusive possession applies with special force to *tenants in common.* Where a plaintiff claims as purchaser of land to the possession of which he and others are entitled as tenants in common, or joint tenants, no mere possession by him can avail as a part performance; no possession can suffice which does not show his individual right to the exclusion of the other co-tenants. The reason of this is obvious, and results from the nature of such co-ownership. Each tenant is entitled to the possession of the common estate; the possession of one is that of all the others." See annotation in 101 A. L. R. 923, at pp. 1037-1041. See also *Delnero v. Serra* (N. J.), 63 A. 2d 896; *Brotman v. Brotman* (Pa.), 46 A. 2d 175; *In re Yarnall's Estate* (Pa.), 103 A. 2d 753.

The appellee has lived in the property continuously since the appellant left her. During all of 1950 and the first few months of 1951, there could be no claim that her possession was other than that of a co-owner. There is nothing to show, at any time after the receipt of the notes, that her possession was referrable to anything except her status as co-owner. There is no evidence that she changed her position or was put to a disadvantage, by reason of the notes, so that it would be inequitable to the point of fraud, to permit the appellant to deny completion of the gift. If we assume that the notes which the appellant wrote were intended to constitute a present gift, rather than suggesting, as might be in-

ferred from some of their language, a future donative intent, we think that under the tests of the cases, appellee has fallen far short of relating her possession solely to the gift. Rather, in the language of the cases, her possession certainly was not unequivocal evidence of the gift alleged in her cross-bill.

The first time the appellee can claim that she possessed the property, other than as a co-owner, is after the receipt of the first note in 1951. It was shortly after this that her mother spent $200.00 to water-proof the walls of the house. Even if the appellee could claim the benefit of the money spent by her mother, so as to establish an act of part performance referrable to the gift claimed by her, this act, like her possession, is more readily referrable to her status as a co-owner and an occupant of the property than it is as a donee of a part interest. The note went no further than to authorize the sale of the house and to promise to contribute the writer's share of the proceeds of sale. It is not likely that the water-proofing of the walls of the house was done in furtherance of an intended sale. Rather, it is to be inferred that the expenditure would not have been made if the property were not to have been lived in indefinitely. In fact, the appellee herself testified that the water-proofing was done for the reason that "* * * we would not have been able to live there because the walls were too damp." She admits that she did not consult the appellant about the repairs, and there was no showing that he even knew of them until the case came to trial. Cf. *Jaworski v. Jaworski, supra*. The papering of the walls of the house cost too little to raise an equity sufficient to enable her to enforce the alleged gift. Cf. *Israel v. Israel*, 30 Md. 120.

The payment of the taxes, ground rent, interest and mortgage principal by the appellee from 1950 on, cannot be attributed to any change in her status in relationship to the property. She had signed the mortgage and so was liable to pay all that she did pay. In addition to

which, it is evident that if she were to have a place to live, these charges would have had to have been paid.

The decree, therefore, must be reversed and the case remanded so that a sale can be made, pursuant to the prayer of the original bill of complaint. A co-tenant may be entitled to contribution from other co-tenants for monies paid for the discharge of liens or encumbrances, and, in some instances, for the expense incurred in preservation of the property. It may be that the appellee would be entitled to contribution from the appellant for some or all of the money expended by her after he left, according to the facts presented. For discussions of the applicable law, see *Meyers v. East End Loan & Savings Assn.*, 139 Md. 607; *Hogan v. McMahon*, 115 Md. 195; *Cunningham v. Cunningham*, 158 Md. 372, 378; *Woodcock v. Pope*, 154 Md. 135; 14 Am. Jur., *Co-Tenancy*, Sections 41-49; 2 Amer. Law Property, Sec. 6.17 and 6.18, pp. 73, 77; *Restatement, Restitution*, Sec. 105. If claims for contribution are filed and substantiated, the amount due the appellee can be charged to and paid from the appellant's share of the proceeds of sale.

*Decree reversed, with costs, and case remanded for further proceedings.*