## AIELLO ET UX. v. AIELLO ET AL.

[No. 224, September Term, 1972.]

*Decided April 3, 1973.*

514

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SMITH, DIGGES and LEVINE, JJ.

*W. Giles Parker,* with whom was *Roger C. Duncan* on the brief, for appellants.

*Benjamin Lipsitz,* with whom was *Kenneth Holniker* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This appeal is from a decree entered by Judge Meyer M. Cardin on August 30, 1972 in the Circuit Court No. 2 of Baltimore City, by which appellants, Francis X. Aiello and his wife Jo Anne, were perpetually enjoined from foreclosing a mortgage they had acquired by assignment.[1] This mortgage had been executed by appellees, Anthony and Michael Aiello, as well as by their brother Francis X., one of the already mentioned appellants. These three brothers each owned 65 of the 300 shares of stock in the Paramount Construction Company, Inc., a corporation founded in 1940 by the boys' father.[2] Until the father's death in 1969 this family utility paving business was apparently operated successfully and harmoniously. But, by August of 1970, according to Anthony Aiello, president of Paramount, the corporation "had been going bad; we had some bad work and were losing money and we needed some money for bills and so forth." So, in order to obtain financial assistance, Anthony communicated with a Mr. Chillis who agreed to lend the corporation $12,000 which was to be evidenced by Paramount's note payable in 90 days with interest at 25% per annum. As additional security for this loan, the brothers executed a mortgage on an unimproved lot located on Old Annapolis Road in Baltimore City which was owned by them in fee simple as tenants in common. On August 11, 1970, the same day the security instrument was executed, the loan was made and the corporation's note was given to Chillis. Acting in their official capacities, Anthony, as president, and Francis, as vice-president, signed the note on behalf of Paramount.

---

1. The injunction also pertained to the trustee named to sell the property and the auctioneer.
2. Since the death of their father in 1969, the remaining 105 shares have been owned by the mother of the three brothers.

While Michael did not sign the note, he acknowledges that he signed the mortgage; but he claims he did so merely as an accommodation to his brothers. This mortgage recites that it was executed as additional security "to guarantee payment of [Paramount's] note" if the corporation failed to satisfy the obligation. When the company defaulted on its obligation to pay the note, Chillis, on May 17, 1971, instituted proceedings to foreclose the mortgage. To prevent the impending foreclosure sale, Francis paid Chillis $15,314.50 to satisfy the debt and received a formal assignment of the mortgage on October 4, 1971. Later, on February 28, 1972, he reassigned the mortgage to his wife and himself as tenants by the entireties. Both assignments were recorded among the land records of Baltimore City on March 9 of that year. About a month later, appellants, in an effort to recoup at least a portion of the moneys advanced, instituted these foreclosure proceedings and the property was advertised for public sale on May 10, 1972. Just two days before this scheduled sale, Michael, claiming that payment of the note by Francis to Chillis extinguished the mortgage, filed a petition seeking an injunction to stay the foreclosure. It is from the granting of that requested relief that this appeal was noted.

Here, appellants claim that, having paid Paramount's entire obligation to Chillis, they are entitled to contribution from the other two Aiello brothers who, upon default by the company, were equally obligated to pay the debt. Since they have received no contribution, appellants contend that they can foreclose against the security to the same extent and in the same manner as their assignor, Chillis, could. On the other hand, Michael argues that his obligation to pay the note was, as a matter of law, extinguished when Francis satisfied the debt and there remained no right to contribution; or, if this is not so, since he signed as an accommodation to his brothers and received no benefit from the loan, Francis and Anthony were primarily obligated to pay and by Francis's doing so, Michael's responsibility was extinguished. To

support this latter contention, Michael states that in August 1970, when the loan from Chillis was obtained, Paramount was heavily in debt and unable to obtain bonding or credit so it could continue to bid on additional construction contracts. This financial crisis so stymied Paramount's ability to conduct business that Francis and Anthony, in order to earn a living, formed a new paving contracting corporation, Aiello Construction Co., in which Michael had no interest. Michael claims that the money from the Chillis loan went into the new corporation in order to launch that venture and was used to promote and aid it and, therefore, the loan did not benefit him. Francis disputes this and counters by stating that the Aiello Construction Co. was founded about nine months before the Chillis loan primarily with $25,000 borrowed from Paramount which was fully repaid. To this he adds that all of the proceeds of the $12,000 loan went to pay the debts of Paramount and, therefore, Michael, as an equal shareholder in the corporation, was benefited to the same extent as his brothers.

Although the proof presented by each side on this issue leaves much to be desired, the chancellor apparently accepted Michael's version. Judge Cardin, in a very brief memorandum, found that after November 10, 1969 Michael neither worked for nor held office in Paramount; that he signed the mortgage as an accommodation to his brothers who used the funds to organize the new corporation in which he had no interest; that he received no consideration from the note which the mortgage secured; and, "it would be against equity and good conscience to allow Francis Aiello to buy back the mortgage and foreclose it against his brother." For these reasons, a decree was issued which did no more than permanently enjoin foreclosure of the mortgage. As we think the chancellor erred, we will vacate his decree and remand the case for further proceedings.

Appellants' first contention on appeal is that the decree should be reversed since it failed to adjudicate all of the rights of the parties. This is so they say because the

decree by its terms merely enjoined foreclosure but neither extinguished the mortgage lien nor determined if there was a right of contribution. The appellants claim that the decree left them "in a state of perpetual limbo or suspension." We agree. Generally, once an equity court has assumed jurisdiction, it will retain it to decide all issues which are raised by the subject matter of the dispute between the parties and award complete relief in order "to avoid circuity of action." *Vulcan, Inc. v. Md. Home Imp. Comm'n,* 253 Md. 204, 211, 252 A. 2d 62 (1969) ; *Phil J. Corporation v. Markle,* 249 Md. 718, 725, 241 A. 2d 718 (1968) ; *Jacham Enterprises v. Hoffman,* 233 Md. 432, 438, 197 A. 2d 128 (1964) and cases cited in each. The decree here fails to adhere to the dictates of this well established principle. Its infirmity stems from the fact, already noted, that it does not decide the issue of whether the property is free from the effects of the mortgage or an equitable lien nor does it determine whether there exists any right to contribution from the other two brothers.

Apparently satisfied that this decree grants him complete relief, Michael argues that both the mortgage lien and any responsibility for the debt which it was given to secure were, as a matter of law, completely extinguished once Francis satisfied the indebtedness to Chillis. That theory of law is not supported by the decisions of this Court. On the contrary, it is clearly the law of Maryland that while payment of the debt secured by the mortgage extinguishes it as far as the mortgagee is concerned, it does not necessarily extinguish the debt so as to prevent requiring reimbursement from the mortgagor to the person making the payment. So, "if one tenant in common pays a mortgage debt, he can 'keep the mortgage on foot until reimbursed the moiety paid for the other tenant in common.' " *Parsons v. Urie,* 104 Md. 238, 64 A. 927 (1906). Generally, when one of two or more co-owners of an equity of redemption satisfies the mortgage debt or other encumbrance upon their common property and that payment inures to the benefit of other owners,

the payor is entitled to receive contribution from his co-tenants to the extent he has paid their share. This is so unless, as between any of the co-tenants, he alone or with some but not all the others, has primary responsibility to satisfy the obligation. *Lingo v. Lingo,* 267 Md. 707, 299 A. 2d 11 (1973); *Colburn v. Colburn,* 265 Md. 468, 474-76, 290 A. 2d 480 (1972); *Pino v. Clay,* 251 Md. 454, 456-57, 248 A. 2d 101 (1968); *Withers v. Douglas,* 206 Md. 141, 148, 110 A. 2d 513 (1955); *Heighe v. Evans,* 164 Md. 259, 265, 164 A. 671 (1933); *Cunningham v. Cunningham,* 158 Md. 372, 378, 148 A. 444 (1930); *Woodcock v. Pope,* 154 Md. 135, 144-45, 140 A. 76 (1928); *Meyers v. Loan & Sav. Assn,* 139 Md. 607, 612-13, 116 A. 453 (1922); *Hogan v. McMahon,* 115 Md. 195, 201, 80 A. 695 (1911).

This right of contribution can be enforced in several ways. Among them, and perhaps preferable, the paying party may obtain from the mortgagee or his assigns an assignment of the mortgage, *Hogan v. McMahon, supra* at 203. If that is not possible,[3] he may assert a right of subrogation as a surety of the others as regards their share of the debt and, subject to the intervening rights of any innocent third party, acquire and enforce an equitable lien for the amount due him. In such a situation "courts of equity do not hesitate to adapt their methods to the exigencies of justice or to protect the equitable rights of those concerned" and compel the ultimate payment of a debt by those who in equity and good conscience ought to pay it. *Meyers v. Loan & Sav. Assn, supra,* 139 Md. at 613.

Michael, apparently aware of the possibility of failure on his first contention, argues alternatively, that he still need not lose as he is entitled to have his interest in the property, as well as himself personally, exonerated from

---

3. A mortgagee, in the absence of an agreement, ordinarily cannot be required to assign the mortgage; he can only be required to accept the moneys due and do nothing further or accept the moneys due and then release or discharge the mortgage. *Heighe v. Evans,* 164 Md. 259, 265, 164 A. 671 (1933) and cases cited there; *Parsons v. Urie,* 104 Md. 238, 64 A. 927 (1906).

the necessity of making any contribution to the appellants. He reasons that the key to his victory is the fact that he executed the mortgage merely as an accommodation to his brothers in order to permit them to borrow funds for their own purposes and without benefit to him. Should this contention prove to be factually sound, his suggested result would be correct.

We now examine the evidence in this case to determine the reason which prompted Michael to execute the mortgage. To be sure, the chancellor concluded that Michael joined in the signing of mortgage solely for the purpose of accommodating his two brothers in order to permit them to obtain funds for the establishment of their new corporation in which he had no interest. But, a careful review of all of the testimony does not reveal sufficient evidence to support this conclusion. In fact, the only evidence tending to sustain Michael's contention is his own testimony that this was the use to which the money was put. However, since Michael admits that he had not seen the check representing the loan and did not know what happened to the proceeds of it, his statements are conclusions unsupported by facts and cannot form the necessary foundation for the decree. Francis and his witnesses, who were in a better position to know what happened to the proceeds of the loan, nevertheless, did not supply us with a clearer picture of where the money went. While they did state that the funds were used to reduce Paramount's debts, their testimony was similarly vague and unsupported by facts. The bank statements and records of the two corporations which should contain proof on this issue were not produced at trial.

It seems clear to us that the answer to this dispute depends upon a determination of the use to which the money obtained from the Chillis loan was put. If these proceeds were utilized, as the appellants contend, to pay debts owed by Paramount, Michael, an equal shareholder with his brothers in that corporation, would be benefited and his interest in the mortgaged lot would be responsible for contribution to his co-tenant to the extent he paid

his share. On the other hand, if the path of the money is traced to the Aiello Construction Co. and was used to aid it, as Michael contends, even though it temporarily resided in the bank account of Paramount, he would have obtained no benefit from the loan. If no such benefit was received, Michael would be but a surety for his brothers and, upon repayment of the debt by those primarily obligated to pay, he would be entitled to have both the mortgage covering his interest in the lot and any indebtedness secured thereby extinguished. It appears quite odd to us that even though the evidence discloses that the books and records of these two corporations were available and presumably would reflect the path the $12,000 took from the time it left Mr. Chillis' hands until it was beyond the reach of any of the parties to this suit or their two corporations, no resort was made to this probative, if not conclusive, evidence in determining this issue. In the unique circumstances of this case, where the contents of records which would probably be dispositive of this issue were mentioned, but not produced at trial, though available, we think that the "purposes of justice will be advanced by permitting further proceedings in the cause, . . . through . . . the introduction of additional evidence. . . ." Maryland Rule 871 a; *Phillips v. Phillips,* 215 Md. 28, 36-37, 135 A. 2d 849 (1957). We will, therefore, vacate the decree entered by Judge Cardin and remand the case without affirmance or reversal to the trial court. In doing so, we are mindful, as the chancellor should be on remand, of the principle that when a mortgage, promissory note or other evidence of an indebtedness is executed by two or more persons, either jointly or jointly and severally, the presumption is that the debt was created for their equal benefit. The burden of proving that one or more of the makers signed the instrument as surety for others is upon the party alleging it. *Cunningham v. Cunningham,* 158 Md. 372, 378, 148 A. 444 (1930) ; *Brady v. Brady,* 110 Md. 656, 661, 73 A. 567 (1909). This is so without regard to the order in which the makers sign. *Brady v. Brady, supra.* On re-

mand, additional testimony can be taken in order to determine if Michael acted merely to accommodate his brothers or whether he benefited with them. In this way, a proper decree, based on a sufficient factual foundation, can be issued.

In concluding, we mention that in order to end all possible litigation between these parties not only concerning the validity *vel non* of the lien and the right to contribution, but also to terminate the brothers' joint ownership of the lot, the chancellor, on remand, can, if requested, allow an amendment to this action so the parties could seek permission to sell the lot in lieu of partition. *See* Rule 871 a; *Fletcher v. Havre de Grace Co.*, 229 Md. 196, 203, 177 A. 2d 908 (1962). Such a sale, as authorized by Maryland Code, (1957, 1966 Repl. Vol.), Art. 16, §§ 154-55, and Rules BJ70-71, would achieve a complete settlement not only of the rights of the parties concerning any claim of priority in the distribution of the proceeds of the sale but also allow for separate enjoyment of the jointly owned property. *Cf. Hogan v. McMahon, supra.*

> *Decree vacated and case remanded without affirmance or reversal for further proceedings.*
> *Costs to abide the final result.*